IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GAYLE J. JOHNS,<br><br>                     Plaintiff,<br><br>    v.<br><br>NORTHLAND GROUP, INC.,<br><br>                     Defendant. | CIVIL ACTION<br>NO. 14-2947 |

**OPINION**

**Slomsky, J.**                                                                                                              **December 31, 2014**

## I.    INRODUCTION

This case arises out of Defendant Northland Group, Inc.'s attempt to collect on a debt Plaintiff Gayle J. Johns owed to Bloomingdale's and Macy's. Plaintiff contends that collection of the debt was time-barred under the relevant statute of limitations. In addition, Plaintiff alleges that Defendant's communications with Plaintiff regarding the debt violated provisions of the Fair Debt Collection Practices Act (FDCPA).

Plaintiff's Complaint was originally filed in state court and was removed by Defendant to this Court on May 23, 2014. (Doc. No. 1.) On July 2, 2014, Defendant filed a Motion to Dismiss. (Doc. No. 6.) Plaintiff Responded to the Motion on July 17, 2014. (Doc. No. 7.) For reasons that follow, the Court will dismiss the Complaint.

## II.    FACTUAL BACKGROUND

On June 7, 2013, Plaintiff received a letter from Defendant, a company that handles debt collection matters. (Doc. No. 1, Ex. A, ¶¶ 2, 14). The letter was sent in regard to Plaintiff's account with Bloomingdale's. (Id. at 13.) The top right corner of the letter stated:

1

ACCOUNT INFORMATION
Creditor: Department Stores National Bank
Store Name: Bloomingdale's
Original Account #: ********1561

(Id.)  The letter stated in the middle of the page:

**Your Past Due Account Balance $1,936.67**
Your Settlement Offer $1,258.86

(Id.)  The content of the letter reads as follows:

> Bloomingdale's will allow you to settle your account for $1,258.86 in 3 payments starting on 6/28/13.  We are not obligated to renew this offer.  The payment can be no more than 30 days apart.  Once all three payments have been paid to our office on time, a letter will be sent confirming the above referenced account has been resolved.  Please send in the payments along with a payment stub to the address below.  Make check payable to DSNB.
>
> This is an attempt to collect a debt by a debt collector and any information obtained will be used for that purpose.  This communication is sent to you by Northland Group, Inc., a debt collector and a member of ACA International.  This collection agency is licensed by the Minnesota Department of Commerce.

(Id.)

On December 10, 2013, Plaintiff received another letter from Defendant in reference to her account with Macy's.  Like the June 7, 2013 letter, the top right corner provided the following information:

ACCOUNT INFORMATION
Creditor: Department Stores National Bank
Store Name: Macy's
Original Account #: ********5936

(Doc No. 1, Ex. A, at 12.)  The letter stated in the middle of the page:

Your past due account balance: $8,993.20
Your settlement offer: $4,046.94

The balance of the letter reads as follows:

> Dear Gayle D Johns,
>
> The above referenced Macy's account has been assigned to Northland Group, Inc. for collection. Macy's is willing to reduce your balance by offering you a settlement. We are not obligated to renew this offer. Upon receipt and clearance of $4,096.94, a letter will be sent confirming the above referenced account has been resolved. This offer does not affect your rights set forth below. Make check payable to DSNB.
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion of it, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.
>
> Please read this important notice from your creditor: Whenever $600 or more in principal of a debt is forgiven as a result of settling a debt for less than the balance owing, the creditor may be required to report the amount of the debt forgiven to the Internal Revenue Service on a 1099C form, a copy of which would be mailed to you by the creditor. If you are uncertain of the legal or tax consequences, we encourage you to consult your legal or tax advisor.

(Doc. No. 1, Ex. A, at 12.)

In addition to receiving these letters, Plaintiff alleges that Defendant made "numerous, offensive phone calls" attempting to collect on the debt, including "calling [her] friends and family members to discuss the alleged debt and improperly seeking information regarding the alleged debt." (Doc. No. 1, Ex. A, ¶ 18.)

After receiving the two letters and phone calls, Plaintiff filed an action against Defendant alleging that collection on the debt was time-barred under Pennsylvania law, 42 Pa. C.S.A. § 5525(a), and that Defendant's collection attempts violated provisions of the FDCPA, 15 U.S.C. § 1692. As evidence of the FDCPA violations, Plaintiff argues that Defendant did not clearly identify the creditor in the two letters and made misrepresentations about the legal status of the

3

debt. Plaintiff also states that "Defendant provide[d] no information . . . as to how it would redeem Plaintiff's credit or what changes it would make with the credit reporting agencies." (Doc. No. 1, Ex. A, ¶ 16.) Finally, Plaintiff argues that the phone calls she received from Defendant were improper and violated the FDCPA.[1]

In its Motion to Dismiss, Defendant submits as a threshold matter that Plaintiff failed to plausibly allege that the debt at issue is the type of debt covered under the FDCPA. Defendant also argues that it is permissible to seek voluntary repayment of the debt from Plaintiff even if the debt was time-barred under Pennsylvania law. Finally, Defendant avers that Plaintiff failed to establish that the letters or the phone calls were improper under the FDPCA. For reasons that follow, the Court will grant the Motion to Dismiss the Complaint in its entirety.

## III.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "A claim has facial plausibility when the plaintiff

---

[1] In Plaintiff's Response to Defendant's Motion to Dismiss, she introduces a new argument regarding the alleged misrepresentations Defendant made in its letters. Specifically, in the June 7, 2013 letter, Defendant writes "[t]his collection agency is licensed by the Minnesota Department of Commerce," and that Defendant is a "member of ACA International." (Doc. No. 1, Ex. A, at 13.) Plaintiff contends that this information is a "false or misleading representation[]" that the debt is associated with the United States or a State. (Doc. No. 7 at 5.) The Court will not consider this argument since it is not alleged in the Complaint as a separate claim.

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).  "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679.  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV. ANALYSIS

In her Complaint, Plaintiff's claims fall into two categories—first, that collection on the debt was time-barred under 42 Pa. C.S.A. § 5525(a), and second, that Defendant's collection

5

attempts violated sections of the FDCPA.[2] Defendant's Motion to Dismiss analyzes each of Plaintiff's claims and also raises another reason to dismiss the Complaint—that Plaintiff failed to include enough facts to plausibly state that the debt at issue is the type of debt covered by the FDCPA. The Opinion will first discuss the threshold issues regarding the statute of limitations and whether the type of debt in contention is covered by the FDPCA. The Court will then examine Plaintiff's claims regarding the content of the letters and the nature of the phone calls.

### A. Although the Statute of Limitations Had Expired on the Debt, Defendant Was Still Permitted to Seek Voluntary Repayment from Plaintiff

In her Complaint, Plaintiff asserts that Defendant's attempt to collect on the debt was "time-barred by the statute of limitations as imposed by 42 Pa. C.S. [sic] 5525(a)." (Doc. No. 1, Ex. A, at 7.) The state where the debt arose provides the applicable statute of limitations for purposes of determining whether the obligation is time-barred. Martsolf v. JBC Legal Grp., P.C., 1:04-CV-1346, 2008 WL 275719, at *4 (M.D. Pa. Jan. 30, 2008). Since the debts here were incurred in Pennsylvania, 42 Pa. C.S.A. 5525(a) applies and sets a four-year period of limitations for actions arising in contract.

---

[2] In the Complaint, Plaintiff does not separate the alleged violations of the FDCPA into separate claims set forth in different counts. Rather, Plaintiff alleges facts on one page, and on another states in a single count labelled as "Count I" that Defendant violated the FDCPA "in one or more of the following ways:"

> (a) Harassing, oppressing or abusing Plaintiff in connection with the collection of a debt in violation of 15 U.S.C. § 1692d.
> (b) Misrepresenting the character, amount, or legal status of Plaintiff's debt in violation of 15 U.S.C. § 1692e(2)(A).
> (c) Using misrepresentations or deceptive means to collect a debt in violation of 15 U.S.C. § 1692e(1).
> (d) Using unfair or unconscionable means to collect a debt in violation of 15 U.S.C. § 1692f.
> (e) By acting in an otherwise deceptive, unfair and unconscionable manner and failing to comply with the FDCPA.

(Doc. No. 1, Ex. A, ¶ 22.)

attempts violated sections of the FDCPA.[2] Defendant's Motion to Dismiss analyzes each of Plaintiff's claims and also raises another reason to dismiss the Complaint—that Plaintiff failed to include enough facts to plausibly state that the debt at issue is the type of debt covered by the FDCPA. The Opinion will first discuss the threshold issues regarding the statute of limitations and whether the type of debt in contention is covered by the FDPCA. The Court will then examine Plaintiff's claims regarding the content of the letters and the nature of the phone calls.

### A. Although the Statute of Limitations Had Expired on the Debt, Defendant Was Still Permitted to Seek Voluntary Repayment from Plaintiff

In her Complaint, Plaintiff asserts that Defendant's attempt to collect on the debt was "time-barred by the statute of limitations as imposed by 42 Pa. C.S. [sic] 5525(a)." (Doc. No. 1, Ex. A, at 7.) The state where the debt arose provides the applicable statute of limitations for purposes of determining whether the obligation is time-barred. Martsolf v. JBC Legal Grp., P.C., 1:04-CV-1346, 2008 WL 275719, at *4 (M.D. Pa. Jan. 30, 2008). Since the debts here were incurred in Pennsylvania, 42 Pa. C.S.A. 5525(a) applies and sets a four-year period of limitations for actions arising in contract.

---

[2] In the Complaint, Plaintiff does not separate the alleged violations of the FDCPA into separate claims set forth in different counts. Rather, Plaintiff alleges facts on one page, and on another states in a single count labelled as "Count I" that Defendant violated the FDCPA "in one or more of the following ways:"

> (a) Harassing, oppressing or abusing Plaintiff in connection with the collection of a debt in violation of 15 U.S.C. § 1692d.
> (b) Misrepresenting the character, amount, or legal status of Plaintiff's debt in violation of 15 U.S.C. § 1692e(2)(A).
> (c) Using misrepresentations or deceptive means to collect a debt in violation of 15 U.S.C. § 1692e(1).
> (d) Using unfair or unconscionable means to collect a debt in violation of 15 U.S.C. § 1692f.
> (e) By acting in an otherwise deceptive, unfair and unconscionable manner and failing to comply with the FDCPA.

(Doc. No. 1, Ex. A, ¶ 22.)

Plaintiff's statute of limitations claim fails, however, for two reasons. First, Plaintiff has not set forth in her Complaint sufficient factual information to show how the debt was time-barred. The starting and ending date of the statute of limitations are not alleged, and Plaintiff's claim that the debt is time-barred is a mere legal conclusion that the Court will disregard.

Second, even if Plaintiff provided sufficient facts to establish that the debt was time-barred, Defendant was still permitted to seek voluntary repayment of the debt. Under Pennsylvania law, the expiration of the statute of limitations does not invalidate the debt, but "merely prevents judicial enforcement" of it. Martsolf, 2008 WL 275719, at * 4. Pursuant to the FDCPA, a debt collector may seek voluntary repayment of the time-barred debt, so long as the debt collector does not initiate or threaten legal action in connection with the collection efforts. Huertas v. Galaxy Asset Mgmt., 641 F.3d 28, 32-33 (3d Cir. 2011). Whether a debt collector's attempt to collect on the debt threatens litigation depends upon the language of the letter and is analyzed under the "least sophisticated debtor" standard. Id. (citing Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006). While the least sophisticated debtor standard protects naïve consumers, "it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness . . . ." Brown, 464 F.3d at 454.

In Huertas v. Galaxy Asset Management, the Third Circuit considered whether a debt collector's letter contained language that threatened litigation from the viewpoint of the least sophisticated debtor. 641 F.3d 28 (3d Cir. 2011). In the letter, the collector noted that plaintiff's account had been reassigned and in bold capital letters stated, "**THIS IS AN ATTEMPT TO COLLECT A DEBT.**" Id. at 33. The court held that even the least sophisticated consumer would not understand the collector's letter to "explicitly or implicitly threaten litigation." Id.

Here, the two collection letters did not contain any language that indicated that legal action was initiated or threatened. Defendant, therefore, could seek from Plaintiff voluntary repayment of the debt even if the statute of limitations had expired.[3] In the June letter, Defendant states "this is an attempt to collect a debt by a debt collector," similar to the letter in Huertas. (Doc. No. 1, Ex. A, at 13.) The December letter states that this account "has been assigned to [Defendant] for collection," again similar to the letter in Huertas. (Id. at 12.) Moreover, litigation is not explicitly or implicitly discussed in either letter. Accordingly, Defendant was permitted to seek voluntary repayment of the debt because Defendant did not initiate litigation against Plaintiff nor threaten litigation in the letters. Thus, the Court will dismiss Plaintiff's statute of limitations claim.

In addition, Plaintiff did not address Defendant's argument that the FDCPA permits voluntary repayment of a time-barred debt in her Response to Defendant's Motion to Dismiss. Thus, the Court may consider this argument unopposed.[4] For all these reasons, the Court will dismiss Plaintiff's statute of limitations claim.

---

[3] As discussed infra, Defendant's use of the term "settlement offer" does not threaten litigation. See Campuzano-Burgos v. Midland Credit Mgmt., Inc., 550 F.3d 294, 299 (3d Cir. 2008) ("There is nothing improper about making a settlement offer.")

[4] In Plaintiff's Response to Defendant's Motion to Dismiss, she includes a new argument that Defendant violated the FDCPA by failing to disclose that it was attempting to collect on a time-barred debt. (Doc. No. 7 at 6.) This claim is not alleged in the Complaint and for this reason will not be considered by the Court. Additionally, Plaintiff cites nine cases to support this argument, but only one comes out of a district court from this state, Aronson v. Commercial Financial Services, 96-cv-2113, 1997 WL 1038818 (W.D. Pa. Dec. 22, 1997). Plaintiff avers that this case stands for the proposition that attempting to collect a time-barred debt without disclosing the fact that it is time-barred is a misrepresentation concerning the legal status of the debt and therefore a violation of the FDCPA. Aronson, however provides no support for Plaintiff's claim. In Aronson, an employee of the defendant debt collector called plaintiff and made misstatements about the effect of the statute of limitations on the legal status of the debt, stating that the statute of limitations "only has to do with the length of time that it can show on your credit report." Aronson, 1997 WL 1038818, at *2. The court found that this

**B.     Claims Under the FDCPA**

The balance of Plaintiff's claims involve alleged violations of the FDCPA.  To state a claim under the FDCPA, a plaintiff must establish that: (1) he or she is a consumer who was harmed by violations of the FDCPA; (2) that the "debt" arose out of a transaction entered into primarily for personal, family, or household purposes; (3) that the defendant collecting the debt is a "debt collector;" and (4) that the defendant violated, by act or omission, a provision of the

---

misleading statement regarding the status of the debt violated the FDCPA.  There is no allegation here that Defendant misrepresented the effect of the statute of limitations like the employee in Aronson.  Therefore, Plaintiff's argument is unconvincing.

In addition, the other cases Plaintiff cites also do not stand for the proposition that attempting to collect a time-barred debt without disclosing the fact that the debt is time-barred is a violation of the FDCPA.  Rather, the cases Plaintiff cites either correctly state that a collector may not initiate or threaten litigation in attempting to collect a time-barred debt, or do not directly deal with the issue of a collector's responsibility to disclose that it is attempting to collect a time-barred debt.  See Wright v. Asset Acceptance Corp., C-3-97-375, 2000 WL 33216031, at *3 (S.D. Ohio Jan. 3, 2000) (finding that plaintiff had not alleged that his debt was time-barred, and therefore, plaintiff could not argue that he had been deceived into relinquishing a statute of limitations defense); Taylor v. Unifund Corp., 98 C 5921, 1999 WL 33545372, at *2 (N.D. Ill. May 3, 1999) (finding that a debt collector's representation that it could legally prevail in a lawsuit to collect a time-barred debt was a misrepresentation of the status of the debt); Simmons v. Miller, 970 F. Supp. 661, 665 (S.D. Ind. 1997) (analyzing whether defendant's debt-collection action was time-barred and thus in violation of the FDCPA); Stepney v. Outsourcing Solutions, Inc., 97 C 5288, 1997 WL 722972, at *5 (N.D. Ill. Nov. 13, 1997) (finding that defendant's collection of a time-barred debt violated the FDCPA because defendant threatened "further collection action"); Lindbergh v. Transworld Sys., Inc., 846 F. Supp. 175, 179 (D. Conn. 1994) (granting defendant's motion for summary judgment because plaintiff failed to raise a genuine issue of material fact showing that defendant knew that it was attempting to collect a time-barred debt); Martinez v. Albuquerque Collection Serv., Inc., 867 F. Supp. 1495, 1506 (D.N.M. 1994) (denying summary judgment motion regarding plaintiff's claim that defendant attempted to collect on a time-barred account because genuine issue of material fact existed as to whether defendant contacted plaintiff about time-barred debt); Beattie v. D.M. Collections, Inc., 754 F. Supp. 383, 393 (D. Del. 1991) (explaining that "threatening . . . a lawsuit which the debt collector knows or should know is unavailable . . . by reason of a legal bar such as the statute of limitations is the kind of abusive practice the FDCPA was intending to eliminate"); Kimber v. Fed. Fin. Corp., 668 F. Supp. 1480 (M.D. Ala. 1987) (holding that a "debt collector's filing of a lawsuit on a debt that appears to be time-barred . . . is an unfair and unconscionable means of collecting the debt").

FDCPA. Donohue v. Reg'l Adjustment Bureau, Inc., 12-cv-1460, 2013 WL 1285469, at *3 (E.D. Pa. Mar 28, 2013) (citing 15 U.S.C. § 1692a-o).

At the outset, Defendant submits that Plaintiff has failed to plausibly allege that the "debt" arose out of a transaction entered into for personal, family, or household purposes. In addition, Defendant argues that Plaintiff has not plausibly stated that the content of the letters and the frequency and substance of the phone calls violated the FDCPA. For reasons that follow, the Court will dismiss Plaintiff's FDCPA claims against Defendant alleged in Count I.

   **1. Plaintiff Has Failed to Plausibly State in her Complaint that the Debt at Issue was a "Debt" as Defined Under § 1692a(5) of the FDCPA**

Defendant submits that the Complaint should be dismissed because Plaintiff has failed to plead that the type of debt Defendant sought to collect was one that is subject to the FDCPA. The FDCPA prohibits certain practices of a debt collector while attempting to collect a "debt" as defined in § 1692a(5). Zimmerman v. HBO Affiliate Grp., 834 F.2d 1163, 1167 (3d Cir. 1987). Section 1692a(5) of the FDCPA defines debt as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes."

In Vaquero v. Frederick J. Hanna & Assocs., the court considered at the motion to dismiss stage whether plaintiff had plausibly stated that the debt at issue was of the type described in § 1692(a)(5). 13-cv-0641, 2013 WL 5947011, at *2 (D.N.J. Nov. 6, 2013). In Vaquero, plaintiff stated in the complaint that "[d]efendant sought to collect from [p]laintiff a debt . . . arising from transactions incurred for personal, family, or household purposes." Id. The court dismissed the complaint because this allegation did not allege sufficiently that the debt at issue was a "debt" as defined in the FDCPA. The court found that plaintiff's language was a

legal conclusion and the type of "threadbare recital" forbidden by Iqbal and Twombly.  Id.; see Nicholas v. CMRE Fin. Servs., Inc., 08-cv-4857, 2009 WL 1652275, at *2 (D.N.J. June 11, 2009) ("By limiting itself to the language of the [FDCPA] and failing to provide any facts specific to [plaintiff], the [c]omplaint, as currently constituted cannot meet the requirements of . . . Iqbal.")

Here, Plaintiff alleges in her Complaint the following with regard to the nature of the debt: "Defendant is a debt collector as that term is defined by 15 U.S. § 1692a(6), and sought to collect a consumer debt from Plaintiff."  (Doc. No. 1, Ex. A, ¶ 11.)  This description of the debt is even less descriptive than the debt described in Vaquero.  Plaintiff does not even allege that the debt arises from transactions made for personal, family, or household use.  Rather, she uses a legal conclusion that the Court may disregard.  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (stating that a district court must accept as true all of the complaint's well-pleaded facts, but may "disregard any legal conclusions").  Because Plaintiff has failed to plausibly allege that the debts at issue here are covered debts as defined in § 1692a(5) of the FDCPA, her FDCPA claims alleged in Count I will be dismissed.

        **2.**        **The Content of the June 7 and December 10, 2013 Letters Did Not Violate the FDCPA**

Even if Plaintiff had sufficiently alleged that Defendants were attempting to collect a "debt" as defined under the FDCPA, Plaintiff's FDCPA claims would still fail because her arguments regarding the content of the letters are without merit.  Plaintiff contends that the letters violated the FDCPA in several ways.  First, the letters "creat[ed] ambiguity as to the source and affiliation of the alleged debt."  (Doc. No. 1, Ex. A, ¶ 14.)  Second, Defendant's use of the term "settlement offer" implied that "litigation was imminent and misrepresent[ed] the nature and legal status of the alleged debt."  (Doc. No. 1, Ex. A, ¶ 15.)  Third, in the letters,

11

Defendant did not provide information regarding "how it would redeem Plaintiff's credit or what changes it would make with the credit reporting agencies." (Id. ¶ 16.) These arguments are not at all persuasive.

### a. Plaintiff has not plausibly alleged that Defendant misrepresented or created ambiguity regarding the identity of the creditor

With regard to the content of the June and December letters, Plaintiff's first claim is that the letters "creat[ed] ambiguity as to the source and affiliation of the alleged debt" by stating "Creditor: Department Stores National Bank," and then noting "Store Name: Bloomingdale's" and "Store Name: Macy's." (Doc. No. 1, Ex. A, ¶ 14.) Plaintiff does not pinpoint in the Complaint which provision of the FDCPA that this claim violates. The Court will assume that Plaintiff is alleging a violation of 15 U.S.C. § 1692e, which forbids the use of any false, deceptive, or misleading representation in connection with the collection of a debt.

In analyzing communications from lenders to debtors, the Third Circuit, as noted above, applies the "least sophisticated debtor" standard. Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006). Though the least sophisticated debtor standard protects naïve consumers, "it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness . . . ." Id. at 454. Even the least sophisticated debtor is presumed to have a "basic level of understanding and willingness to read with care." Id. Moreover, "the standard does not go so far as to provide solace to the willfully blind or non-observant. Even the least sophisticated debtor is bound to read collection notices in their entirety." Campuzano-Burgos v. Midland Credit Mgmt., 550 F.3d 294, 299 (3d Cir. 2008).

In Hammett v. AllianceOne Receivables Management, Inc., the court examined whether describing the creditor as "Client: PNC Bank" sufficiently identified the creditor. 11-cv-3172,

2011 WL 3819848, at * 4 (E.D. Pa. Aug. 30, 2011). Plaintiff argued that the words "creditor" and "client" are not interchangeable, so the description of PNC Bank as the "client" was misleading. Id. The court disagreed, finding that although the "identity of the creditor could have been more precise," the language was not false, misleading, or deceptive under the FDCPA. Id.

Here, Defendant identifies the creditor by using the term "Creditor" in both the June and December letters as Department Stores National Bank. The word "client" is not used in either letter. The letters further note the name of the store where the debt was incurred and even provides the account number from which the debt emanates. Even an unsophisticated debtor could plainly see that Department Stores National Bank is the creditor who was attempting to collect on Plaintiff's accounts with Bloomingdale's and Macy's. There is no ambiguity here as to the source and affiliation of these debts.

      **b.**    **Plaintiff has failed to plausibly allege that Defendant's use of the term "settlement offer" misrepresented the legal status of the debt**

Plaintiff also contends that the use of the term "settlement offer" in the letters imply that "litigation was imminent and misrepresent[ed] the nature and legal status of the alleged debt." (Doc. No. 1, Ex. A, ¶ 15.) In the June letter, Plaintiff is referring to the following language:

> **Your Past Due Account Balance $1,936.67**
> Your Settlement Offer $1,258.86

Bloomingdale's will allow you to settle your account for $1,258.86 in 3 payments starting on 6/28/13. We are not obligated to renew this offer. The payments can be no more than 30 days apart. Once all three payments have been paid to our office on time, a letter will be sent confirming the above referenced account has been resolved.

              ****

(Doc. No. 1, Ex. A, at 13.) In the December letter, Plaintiff is referring to the following:

Your past due account balance: $8,993.29

Your settlement offer: $4,046.94

****

. . . . Macy's is willing to reduce your balance by offering you a settlement. We are not obliged to renew this offer. Upon receipt and clearance of $4,046.94, a letter will be sent confirming the above referenced accounts has been resolved. This offer does not affect your rights set forth below.

****

(Id. at 12.)

It is well established that "[t]here is nothing improper about making a settlement offer" in communications between a collector and a debtor. Campuzano-Burgos, 550 F.3d at 299 (citing Evory v. RJM Acquisitions Funding L.L.C., 505 F.3d 769, 775 (7th Cir. 2007). Forbidding them "would force honest debt collectors seeking a peaceful resolution of the debt to file suit in order to advance efforts to resolve the debt—something that is clearly at odds with the language and purpose of the [FDCPA]." Id. (citing Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 399 (6th Cir. 1998). Moreover, "[p]ermitting the use of settlement letters may allow resolution of a claim without the 'needless cost and delay of litigation . . . [and] is certainly less coercive and more protective of the interests of the debtor.'" Campuzano-Burgos, 550 F.3d at 299 (quoting Lewis, 135 F.3d at 399).

Here, Plaintiff claims that Defendant's use of the term "settlement offer" misrepresented the legal status of the debt or implied that litigation is imminent. This argument is unconvincing. See Campuzano-Burgos, 550 F.3d at 299 ("There is nothing improper about making a settlement offer."); Kryluk v. Northland Grp., Inc., No. 14-cv-3198, 2014 WL 6676728, at *5 (E.D. Pa. Nov. 12, 2014) (holding that "the mere use of the term 'settlement offer' is permissible and, indeed, desirable in the course of resolving debts."). Thus, Plaintiff has failed to plausibly allege that the use of this term violated the FDCPA.

        **c.**      **Defendant was not obligated to provide information about the status of Plaintiff's credit**

Plaintiff also claims in her Complaint that "Defendant provide[d] no information in either letter as to how it would redeem Plaintiff's credit or what changes it would make with the credit reporting agencies." (Doc. No. 1, Ex. A, ¶ 16.) Again, Plaintiff does not connect this allegation to any specific provision of the FDPCA. Moreover, Plaintiff does not cite any legal authority to support her claim that Defendant had some affirmative obligation to inform Plaintiff about her credit standing.

In addition, as noted by Defendant in its Motion to Dismiss, "there is nothing in the letters suggesting, and Plaintiff does not allege, that (1) Defendant was reporting Plaintiff's account to any credit reporting agencies; (2) non-payment of the account was somehow affecting Plaintiff's credit; or (3) Defendant would cause any changes with respect to Plaintiff's credit." (Doc. No. 6 at 13.) Defendant had no affirmative obligation under the FDCPA to advise Plaintiff of the consequences of her failure to pay, or what changes it would make with the credit reporting agencies, nor does Plaintiff state as much in her Complaint. Moreover, Plaintiff failed to address this argument in her Response to Defendant's Motion to Dismiss, and therefore it is perforce unopposed. Thus, this claim is also without merit.

        **3.**      **Plaintiff Has Failed to Plausibly Allege that Defendant Called Plaintiff Repeatedly with Intent to Annoy, Abuse, or Harass**

Finally, Plaintiff submits that "Defendant made or caused to be made numerous, offensive phone calls to Plaintiff attempting to collect the alleged 'debts' including, but not limited, [sic] calling friends and family members to discuss the alleged debt and improperly seeking information regarding the alleged debt from same." (Doc. No. 1, Ex. A, at 7.)

Although Plaintiff has again failed in the Complaint to connect these facts to a specific provision of the FDCPA, the Court will assume that Plaintiff is alleging that these phone calls violated § 1692(d) of the FDCPA. This section forbids "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692(d). The statute lists examples of what constitutes harassing conduct, including "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." Id. For the purpose of the FDCPA, "continuously" means "making a series of telephone calls, one right after the other," and repeatedly means "calling with excessive frequency under the circumstances." Kromelbein v. Envision Payment Solutions, Inc., 3:11-cv-1598, 2013 WL 3947109, at *4 (M.D. Pa. Aug. 1, 2013) (internal citations omitted). In order to determine whether a debt collector acted with the requisite intent, courts look at the frequency, pattern, and substance of the calls. Nyce v. Sterling Credit Corp., 11-cv-5066, 2013 WL 1388051, *4 (E.D. Pa. April 3, 2013).

In Carr v. NCO Financial Systems, Inc., the court examined plaintiff's claim under § 1692(d) based on phone calls that plaintiff received from defendant, a collections agency. 11-cv-2050, 2011 WL 6371899, at *1 (E.D. Pa. Dec. 20, 2011). In the complaint, she described receiving "constant" and "continuous" calls "once every two, three, four, or five days" over an estimated period of thirty days. Id. Plaintiff also identified nine calls in her complaint by date and time that occurred during the thirty day period. Id. The court denied defendant's motion to dismiss this claim and found that plaintiff had pled enough facts to plausibly show that defendant caused the telephone to ring with an intent to annoy or abuse. Id.

In Sussman v. I.C. System, Inc., plaintiff alleged in his complaint that he had received over fifty calls from the debt collector defendant over a three month period. 928 F. Supp. 2d

16

784, 793-94 (S.D.N.Y. 2013). In addition, defendant would hang up shortly after plaintiff or a member of his family would answer the phone. Id. at 794. Plaintiff also alleged that the calls persisted even after plaintiff contacted defendant in writing to stop calling him. Id. The court found that the allegations in the complaint plausibly established that defendant had called plaintiff with intent to harass, and accordingly denied defendant's motion to dismiss. Id.

Here, Plaintiff has failed to plausibly show that Defendants called Plaintiff with intent to harass, annoy, or abuse her. The Complaint simply states that Defendant called Plaintiff "numerous" times, called "friends and family members" and "improperly [sought] information regarding the alleged debt." (Doc. No. 1, Ex. A, ¶ 18.) Unlike the plaintiff in Carr, Plaintiff here has not described with particularity a single phone call she received. Neither the content nor date and time were provided. She did not list how many phone calls she received during the day, or over a week or a month. While Plaintiff claims that her friends and family members received calls from Defendant, she does not identify any of these friends or family members. Also, unlike the plaintiff in Sussman, Plaintiff here does not claim to have asked Defendant to stop calling, nor does she state facts plausibly showing that Defendant called Plaintiff with intent to harass or annoy. Because Plaintiff has failed to provide sufficient facts to support a claim not only that Defendant contacted her repeatedly or continuously, but also did so with intent to annoy, abuse, or harass, the Court will dismiss this claim.[5]

---

[5] In Plaintiff's Response to Defendant's Motion to Dismiss, Plaintiff's counsel attached an affidavit from Plaintiff detailing the phone calls from Defendant. (Doc. No. 7, Ex. C.) The affidavit also described the nature of the debt in response to Defendant's contention that Plaintiff had failed to plausibly show that the debt was of the kind described under the FDCPA. The Court will not consider this affidavit. Generally, a district court ruling on a motion to dismiss may only consider the allegations in the complaint, attached exhibits, and matters of public record. Borough of Moosic v. Darwin Nat. Assur. Co., 556 F. App'x 92, 95 (3d Cir. 2014). "If matters outside the pleadings are presented to and not excluded by the court, the motion to dismiss must be converted to a motion for summary judgment under Rule 56 . . . ."

**V.     CONCLUSION**

Based upon the foregoing, the Court will grant the Motion to Dismiss the Complaint (Doc. No. 6).  The Court, however, will grant Plaintiff leave to file an amended Complaint in order to provide additional facts regarding the nature of the debts at issue here.  The Court will also grant Plaintiff leave to amend the Complaint in order to provide more facts regarding the nature of the offensive phone calls.  Leave to amend the Complaint will not be granted on any claim involving the statute of limitations or the content of the letters.  It would be futile to permit Plaintiff to amend these claims because they rely exclusively on letters that the Court has already upheld as proper in this Opinion.

An appropriate Order follows.

---

Id.  Here, Plaintiff has failed to plausibly state in the Complaint that the debt was a consumer debt, and that the phone calls she allegedly received from Defendant violated the FDCPA.  The Court will not convert Defendant's Motion to Dismiss into one for summary judgment based on Plaintiff's affidavit, and therefore the Court will not consider it.  See Davis v. Allstate Prop. & Cas. Co., 13-cv-7038, 2014 WL 4857434, at *6 n.24 (E.D. Pa. Sept. 30, 2014) (declining to consider exhibits D and E attached to plaintiff's response to defendant's motion to dismiss in order to avoid converting the motion to dismiss to one for summary judgment); Sube v. City of Allentown, 974 F. Supp. 2d 754, 763 (E.D. Pa. 2013) (finding that the "affidavit attached to [p]laintiff's brief, in opposition to a pending motion to dismiss, cannot be considered" because "[it] constitutes a matter outside of the pleading.").  Rather, the Court will dismiss Plaintiff's Complaint and grant her leave to amend the Complaint only in regard to the nature of the debt and the claim regarding "offensive" telephone calls.